**UNITED STATES of America**

v.

**Michael J. O'DRISCOLL**

**No. 4:CR–01–277.**

United States District Court,
M.D. Pennsylvania.

Dec. 18, 2001.

Eric Pfisterer, James T. Clancy, U.S. Attorney's Office, Harrisburg, PA, for United States of America.

David A. Ruhnke, Ruhnke & Barrett, Montclaire, NJ, Ronald C. Travis, Rieders, Travis, et al., Williamsport, PA, for Michael J. O'Driscoll.

## ORDER

MUIR, District Judge.

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On August 29, 2001, a federal grand jury returned an indictment charging Michael J. O'Driscoll with first degree murder. On September 21, 2001, O'Driscoll appeared before the court for arraignment and entered a not guilty plea. On October 9, 2001, the government filed a notice of its intent to seek the death penalty in this case.

The notice of intent to seek the death penalty sets forth, inter alia, several acts of violence and prior criminal convictions as a basis for the imposition of the death penalty. It is alleged, for example, that O'Driscoll has previously been convicted of murder and violent felonies involving firearms and that he has participated "in additional charged and uncharged murders, attempted murders, or other serious acts of violence."

On November 7, 2001, O'Driscoll filed a motion which was concurred in by the

government to remove this case from the December, 2001, trial list and continue the case to the May 2002, trial list. On November 13, 2001, we issued an order placing this case on the March, 2002, trial list. On November 8, 2001, O'Driscoll filed eleven pretrial motions.

■ One of the pretrial motions filed by O'Driscoll is a motion entitled "Motion to Bifurcate Trial, Summoning and Empaneling a Second Jury Only In the Event of Conviction of First–Degree Murder." O'Driscoll requests that two separate juries be empaneled to hear the case, i.e., one to determine guilt and a second drawn at a later time to determine the penalty if he is convicted of first-degree murder. If he is not convicted of first-degree murder, the death penalty does not apply and a second jury would not be empaneled. The so-called motion to bifurcate [1] became ripe for disposition on December 14, 2001, with the filing of O'Driscoll's reply brief.[2]

In addressing O'Driscoll's motion we must first consider certain provisions of the Federal Death Penalty Act of 1994 (the "Act"). 18 U.S.C. § 3591 et seq. Section 3593 of the Act states in relevant part as follows:

> (b) Hearing before a court or jury.—If the attorney for the government has filed a notice [of intent to seek the death penalty] and the defendant is found guilty of or pleads guilty to an offense described in section 3591, the judge who presided at the trial or before whom the guilty plea was entered, or another judge if that judge is unavailable, shall conduct a separate sentencing hearing to determine the punishment to be imposed. The hearing shall be conducted—

>> (1) before the jury that determined the defendant's guilt;

>> (2) before a jury impaneled for the purpose of the hearing if—

>>> (A) the defendant was convicted upon a plea of guilty;

>>> (B) the defendant was convicted after a trial before the court sitting without a jury;

>>> (C) the jury that determined the defendant's guilt was discharged for good cause; or

>>> (D) after initial imposition of a sentence under this section, reconsideration of the sentence under this section is necessary; or

>> (3) before the court alone, upon the motion of the defendant and with the approval of the attorney for the government.

Section 3593(b) contemplates that the jury which is empaneled to decide whether a defendant is guilty of first degree murder ordinarily will also determine the penalty to be imposed in a capital case.

O'Driscoll argues that there is "good cause" to empanel a second jury to hear the penalty phase and relies on § 3593(b)(2)(C). However, the clear intent of that provision is to allow the empaneling of a second jury after the original jury has rendered a guilty verdict and has been discharged for good cause. Section 3593(b)(2)(C) does not permit us at the beginning of the case to make a decision to

---

1. We refer to it as a "so-called motion to bifurcate" because the proceedings are already bifurcated, i.e., there is a guilt phase and a penalty phase. In essence O'Driscoll's motion is a motion to empanel two juries, if necessary, to hear the case.

2. By order of November 15, 2001, briefs in support of the ten other pretrial motions are due on December 21, 2001. If O'Driscoll files briefs in support, the government's briefs in opposition would be due on January 25, 2002, and O'Driscoll's reply briefs would be due on February 8, 2002.

empanel two juries. Instead some event must occur subsequent to a guilty verdict which would justify the discharge of the jury and the empaneling of a second jury to decide the penalty to be imposed. See *United States v. Tipton*, 90 F.3d 861, 892 (4th Cir.1996), cert. denied, 520 U.S. 1253, 117 S.Ct. 2414, 138 L.Ed.2d 179 (1997); *United States v. Walker*, 910 F.Supp. 837, 856–57 (N.D.N.Y.1995).

O'Driscoll argues that because of the particular aggravating circumstances alleged by the government in this case he cannot receive a fair trial if one jury is empaneled to hear both phases of the case. The government has alleged as an aggravating circumstances a prior murder. O'Driscoll contends that in selecting a jury in this case defense counsel will be required to voir dire the jury on the general nature of the allegations in the notice of intent to seek the death penalty to determine whether the very nature of those allegations would substantially impair a prospective juror's ability to give fair consideration to factors in mitigation. O'Driscoll argues that the voir dire process itself will place before the jury information that will unfairly taint the guilt-phase of the trial.

■ However, as we see it at the present time, during voir dire O'Driscoll is not entitled to question the prospective jurors about the specific aggravating circumstances set forth in the government's notice of intent to seek the death penalty. See *Morgan v. Illinois*, 504 U.S. 719, 733–39, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992); *Wainwright v. Witt*, 469 U.S. 412, 418–26, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *United States v. McVeigh*, 153 F.3d 1166, 1207–08 (10th Cir.1998), cert. denied, 526

U.S. 1007, 119 S.Ct. 1148, 143 L.Ed.2d 215 (1999). Indeed, in a prior death penalty case we did not permit such questioning.[3] Although in that prior case we did at jury selection outline the aggravating circumstances alleged by the government, that may have been error on our part. However, the request so to instruct the prospective jurors was made at the last minute by counsel for defendant and we granted the request.

It is not necessary to inform the jury of the specific aggravating circumstances alleged by the government. Instead we will consider permitting counsel to ask the prospective jurors general questions such as the following:

> Are there any circumstances, if proven by the government, under which you would automatically impose a death sentence?

Furthermore, the court will consider giving preliminary instructions which outline all of the statutory aggravating circumstances permitted to be alleged by the government under the Federal Death Penalty Act. This procedure would not reveal to the prospective jurors the specific aggravating circumstances alleged by the government in the notice of intent to seek the death penalty but would give the jurors some context within which to answer questions posed by counsel.

O'Driscoll is concerned about conducting adequate voir dire. He is also concerned about not revealing his prior criminal record to those jurors who will be deciding whether he is guilty or not guilty of the crimes charged in the indictment. Those are legitimate concerns. However, such concerns can be appropriately and effec-

---

**3.** On May 1, 1998, we issued an order in United States v. Hammer, 4:CR–96–239, which, inter alia, denied certain voir dire questions proposed by Hammer. Specifical-

ly, we denied proposed questions 33 through 46 which delved into the specific aggravating circumstances alleged by the government.

tively addressed by well-drafted preliminary instructions and voir dire questions. O'Driscoll's so-called motion to bifurcate will be denied.[4]

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. O'Driscoll's motion entitled "Motion to Bifurcate Trial, Summoning and Empaneling a Second Jury Only In the Event of Conviction of First–Degree Murder" (Doc. 32) is denied.

2. A pretrial conference will be held in the office of the undersigned on *January 25, 2002* at *2:00 p.m.* to address the matters set forth in our order of October 18, 2001.

---

**4.** O'Driscoll relies on the case of *State v. Biegenwald*, 126 N.J. 1, 594 A.2d 172 (1991). O'Driscoll contends that the New Jersey Supreme Court in *Biegenwald* construed a New Jersey statutory provision similar to § 3593(b)(2)(C) to require the empaneling of two juries where one of the aggravating circumstances alleged was a prior murder. First, the New Jersey Supreme Court relied partly on the New Jersey State Constitution. Second, we disagree with the New Jersey Supreme Court's conclusion that the United States Constitution requires such a procedure.

The New Jersey Supreme Court has rejected the approaches adopted by other state and federal Courts on a variety of death penalty issues. For example, that court has held that a death-sentenced defendant may not waive post-conviction review. *State v. Martini*, 144 N.J. 603, 677 A.2d 1106 (1996). This court and the Court of Appeals for this circuit, in contrast, have indicated that such waivers, properly made, are valid. See *United States v. Hammer*, 226 F.3d 229, 236–37 (3d Cir. 2000), cert. denied, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001).