

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-10-2005

# Michael v. Horn

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-9002

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Michael v. Horn" (2005). *2005 Decisions.* Paper 711.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/711

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-9002
_____

HUBERT L. MICHAEL,

Appellant

v.

MARTIN HORN, Commissioner, Pennsylvania Department of
Corrections; *DAVID DIGUGLIELMO, Superintendent of the State
Correctional Institution at Graterford; JOSEPH P. MAZURKIEWICZ,
Superintendent of the State Correctional Institution at Rockview

(*Amended - See Clerk's Order dated 1/6/05)
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 96-cv-01554)
District Judge:  The Honorable Thomas I. Vanaskie
_____

BEFORE: NYGAARD*, AMBRO, and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Filed August 10, 2005)
_____

OPINION OF THE COURT
_____

AMBRO, <u>Circuit</u> <u>Judge</u>

       In the current context, we relate only a brief summary of this case's history.  In

_____

       * Honorable Richard L. Nygaard assumed senior status on July 9, 2005.

October 1994, Hubert Michael pleaded guilty to the kidnapping and shooting death of a sixteen-year-old female and was sentenced to death by the Commonwealth of Pennsylvania. During proceedings (both on direct appeal and on collateral review under the Pennsylvania Post-Conviction Relief Act), Michael expressed, at different times, either a desire to challenge his death sentence or an unwillingness to contest that sentence.

In the course of *habeas* proceedings in the District Court, Michael wrote to the Court in January 2001 to request that no further proceedings occur in his case. The District Court ordered a competency evaluation for Michael. Following an evidentiary hearing and oral argument, the District Court found that Michael was competent and that he knowingly, rationally, and voluntarily made his choice to waive federal collateral review, ordered that the Capital Habeas Corpus Unit of the Defender Association of Philadelphia ("Defender Association"), and Joseph M. Cosgrove, Esq., be dismissed as counsel, and granted Michael's motion to dismiss the *habeas corpus* petition.

Following the entry of the District Court's March 10, 2004 order, the Defender Association filed a notice of appeal from that order to this Court. Subsequently, Michael submitted a letter indicating that he did not wish the appeal to proceed, and the Commonwealth moved for dismissal. On May 4, 2004, we conditionally granted the Commonwealth's Motion to Dismiss. The entry of the order was suspended for ten days to afford Michael a final opportunity to indicate his desire to proceed with federal review of his case. Michael filed a document the following day, May 5, 2004, indicating his

2

desire to proceed and his wish to have new counsel appointed in his appeal. We then scheduled oral argument.

At oral argument, there was some question regarding the District Court's actions regarding the appointment and dismissal of counsel. Following oral argument, we granted a certificate of appealability on the question of "whether the District Court violated 21 U.S.C. § 848(q)(4)(B) in dismissing counsel for Hubert Michael and, if the District Court so erred, whether this error was harmless."[1]

On November 26, 2004, the Clerk's Office received a letter from Michael that was construed as a Motion to Withdraw Appeal and to dismiss Cosgrove as his counsel. On December 3, 2004, the panel entered an order directing counsel for all parties to file a response to the *pro se* motion. In response, Cosgrove indicated that Michael was "anything but steadfast in his desire to terminate this appeal or my representation of him."

On January 5, 2005, in yet another attempt to ascertain Michael's position, we entered an order that warned Michael as follows:

> If you dismiss this appeal you will waive all further right to pursue this appeal. As a result you may also be denied any further review of your conviction and sentence by this or any other court. Additionally, in the future, you may be legally prohibited from filing a new habeas petition or other petition for review. <u>In short, your dismissal of this appeal may terminate any further judicial review of your conviction and sentence</u>.

(Emphasis in original.)

---

[1]Under § 848(q)(4)(B, an individual such as Michael "seeking to vacate or set aside a death sentence . . . [who is] financially unable to obtain adequate representation . . . shall be entitled to the appointment of one or more attorneys. . . ." 21 U.S.C. § 848(q)(4)(B).

3

On February 22, 2005, Michael sent a letter to the Clerk's Office indicating that he had read the Court's order of January 5, 2005, and that he fully understood the consequences of his waiver. Moreover, Michael indicated that he had consulted with counsel and that he nonetheless wished to withdraw his appeal. The following day, after a meeting with Cosgrove, a request was filed to defer any consideration of this letter for a period of two weeks so that Michael could further consult with counsel. We deferred our decision in the appeal to permit counsel time to meet once again with Michael. On March 18, 2005, Cosgrove submitted a document entitled "Report of Counsel" indicating that a litigation plan was under development for Michael and asking us to proceed with a resolution of the question presented in the Certificate of Appealability. However, ten days later, Michael filed another document indicating his desire to dismiss his appeal. Additionally, on May 23, 2005, Michael filed a statement with the Court in which he again asked for dismissal of his appeal.

On June 2, 2005, we issued the following order:

> Inasmuch as the petitioner is represented by counsel, the pro se letters to withdraw the appeal are denied. The District Court's order entered March 10, 2004, is vacated to the extent that it dismissed Joseph M. Cosgrove, Esq., as counsel, granted Michael's motion to dismiss his habeas corpus petition and vacated the stay of execution. The matter is remanded for further proceedings to determine whether habeas corpus relief is warranted. We express no opinion on such questions as whether Michael's claims are exhausted, procedurally barred or meritorious. In the event that Michael files any further pro se motions to dismiss his petition, we urge the District Court to deny them summarily. *See Smith v. Armontrout*, 865 F.2d 1515

(8th Cir. 1988); *St. Pierre v. Cowan*, 217 F.3d 939, 949-50 (7th Cir. 2000).[2]

Appellees Martin Horn *et al.* filed a petition for panel rehearing or rehearing *en banc.* An order denying the petition was filed on July 7, 2005, over Judge Greenberg's dissent, and the mandate[3] issued on July 8, 2005.

We have the inherent power to recall a mandate subject to review by the Supreme Court for abuse of discretion, though that power should be exercised only in extraordinary circumstances. *Calderon v. Thompson*, 523 U.S. 538, 550 (1998); *see also Bell v. Thompson,* 125 S. Ct. 2825, ___ (2005). In explaining that recall may be warranted for good cause, to prevent injustice, or in special circumstances, we have identified five situations which would justify recalling the mandate: 1) where clarification of the mandate and opinion is critical; 2) where misconduct has affected the integrity of the judicial process; 3) where there is a danger of incongruent results in cases pending at the

---

[2]The dissent read:

> Judge Greenberg would dismiss this appeal. He points out that the district court found appellant competent and that the appellant has made his position with respect to dismissing his appeal absolutely clear. On May 25, 2005, appellant filed a statement with this court dated May 23, 2005, that he indicated was "regarding: sentence of death" in which he stated his position as follows: "I ask this court to dismiss any appeal(s) presently being argued before this court. I have had ample time to discuss all the possibilities, and probabilities, with my attorney, Joseph Cosgrove. I am satisfied with the sentence imposed upon me." In Judge Greenberg's view, the court should honor appellant's position. *See United States v. Hammer*, 226 F.3d 229 (3d Cir. 2000).

[3]As the panel disposed of the case by order and not opinion, a formal mandate did not issue. Because this distinction is without substantive effect, we refer to the order as a mandate.

same time; 4) where it is necessary to revise an "unintended" instruction to a trial court that has produced an unjust result; and 5) where a subsequent Supreme Court decision showed that the original judgment was demonstrably wrong. *Am. Iron & Steel Inst. v. EPA*, 560 F.2d 589, 593-95 (3d Cir. 1977).

Here, clarification of the Court's decision is critical for two reasons. First, the order leaves the District Court with little guidance in this complicated case as to our reasons for remanding the case for further proceedings and, indeed, does not identify what error (if any) the District Court committed in connection with the decision appealed. Second, this case presents significant issues concerning a death row inmate who has given different indications about his desire to have a challenge to his sentence heard. We have grappled with these issues before. *See Hammer*, 226 F.3d at 231-37; *United States v. Hammer*, 239 F.3d 302, 302-07 (3d Cir. 2001) (Nygaard, J., dissenting from denial of rehearing *en banc*). These issues have proven to be recurring, and in order to issue an opinion to provide clarification for future cases (and to revisit matters pertaining to the June 2, 2005 order), it is necessary to recall the mandate.

We are mindful that the Supreme Court has indicated that "the promptness with which a court acts to correct its mistakes is evidence of the adequacy of its grounds for reopening." *Calderon*, 523 U.S. at 553. Accordingly, we are endeavoring to act promptly in recalling our mandate. Further, the Supreme Court has cautioned that "the State's interests in finality are all but paramount, without regard to . . . [the grounds on which a] court of appeals predicates the recall . . . ." *Id.* at 558. Here, unlike the

6

situation addressed in *Calderon*, we would not be disrupting the finality of the proceedings but rather clarifying the issues presented in the litigation.

For these reasons, recall of our mandate is warranted. Further, (i) we vacate our order of July 7, 2005, to the extent it denied panel rehearing, (ii) grant Appellees' petition for panel rehearing, and (iii) vacate our order of June 2, 2005.[4]

An appropriate order follows.

---

GREENBERG, <u>Circuit</u> <u>Judge</u>, concurring

I concur with and join in Judge Ambro's opinion to the extent that it withdraws the mandate and in particular concur with and join in footnote 3 specifying the purpose of an oral argument in this case. I also concur with and join in the order accompanying the opinion. I do not concur with and join in the portion of his opinion indicating that "this case presents significant issues concerning a death row inmate who has given different indications about his desire to have a challenge to his sentence heard." To the extent that this portion of the opinion refers to the proceedings in the district court, it is beyond the scope of our certificate of appealability. Of course, my reservation does not preclude me from joining in the order being entered.

---

[4]Oral argument will be scheduled so that the parties can address the following: (1) whether Michael's appeal should be dismissed in light of his filings indicating he does not wish the appeal to proceed; and (2) whether the District Court violated 21 U.S.C. § 848(q)(4)(B) in dismissing counsel for Michael and, if the District Court so erred, whether this error was harmless.

7

NYGAARD, dissenting.

The circumstances presented by this case do not rise to the "extraordinary" level contemplated by the Supreme Court in *Calderon v. Thompson*, 523 U.S. 538 (1998) (holding that courts of appeal may recall their mandate only in extraordinary circumstances). As Judge Ambro points out, we may recall our mandate when clarification is critical. *See Amer. Iron & Steel v. EPA*, 560 F.2d 589, 593 - 95 (3d Cir. 1997). Here, clarification is unnecessary; the mandate we are recalling is unambiguous. In reading our June 2, 2005 order, the District Court would know precisely what steps to take to conclude this litigation. The order remanded this case to the District Court to consider specifically whether habeas corpus relief on the merits was warranted. Relying on applicable case law, we further instructed the District Court how to resolve future conflicts between Michael and his counsel. *See St. Pierre v. Cowan*, 217 F.3d 939 (7th Cir. 2000); *Smith v. Armontrout*, 865 F.2d 1515 (8th Cir. 1989). Thus, further clarification of our mandate is not necessary.

The majority posits two reasons why clarification of our mandate is necessary. First, it held that our order provides scant guidance to the District Court in this complicated case. As explained, I do not believe this is the case. Second, the Majority maintains this case presents "significant issues" concerning death-row inmates who vacillate between pursing their appeals and withdrawing from further federal litigation. While I agree such situations present important issues that should be addressed, that this issue remains unaddressed is irrelevant to the question of whether our mandate is in

8

critical need of clarification.  The purpose of clarification is to elucidate an otherwise unintelligible or ambiguous order, not to give a panel of this Court an opportunity to address issues anew, however significant those issues may be.  Both of the reasons proffered by the majority here misconstrue the purpose of clarification.  Moreover, even were I to concede that our order is ambiguous and requires further clarification, we could simply supplement our order with an opinion, thereby avoiding the drastic action of recalling our mandate.

More troubling than the majority's misapprehension of precedent, however, is its apparent willingness to disregard our institutional rules and procedures in order to affect the outcome of this litigation.  Internal Operating Procedure 9.5.2 provides a ten day period of review for petitions for rehearing en banc.  The Commonwealth of Pennsylvania filed such a petition on June 16, 2005. Pursuant to I.O.P. 9.5.2, a copy of the petition was transmitted by our Clerk's office to all active judges of this court, as well as to Judge Greenberg, who sat on the original panel.  It was at this point that the ten day clock began to run.  Not only did no member of this Court vote for rehearing during this time period, no judge even sought an answer to the petition for rehearing.  See I.O.P. 9.5.2.  Once the ten day period expired, an order was prepared denying rehearing en banc.  This Order was not immediately filed so that Judge Greenberg could prepare an opinion sur denial of rehearing, which was appended to and published with the order denying rehearing on July 7, 2005.  Therefore, according to our own rules, we ought not grant rehearing.  In our jurisprudential system, the rules must be followed in every case.  Due process requires as

9

much.  Yet today, we brush aside our established rules because a judge whose opinion did not garner majority support, either on the merits or on petition for rehearing, feels particularly distressed about a result he could not alter.  We ought remind ourselves of the well-known axiom that "to perform its high function in the best way[,] 'justice must satisfy the appearance of justice.'" *In re Murchison*, 349 U.S. 133, 136, (1955) (*quoting Offutt v. United States* 348 U.S. 11, 14, (1954)). I find it difficult to reconcile this time-test axiom with what happened in this case.  I fear the majority's actions today undermines respect for notions of fundamental fairness.  I dissent.