AMBRO, Circuit Judge.
After finding Hubert Michael competent to terminate his habeas corpus petition in this death-penalty case, the District Court dismissed that petition. The dismissal was appealed, purportedly on Michael’s behalf. He later vacillated on his desire to dismiss this appeal. We hold that the presumption of continuing competency does not apply here because the foundational expert for the District Court’s competency finding has suggested a new evaluation. We therefore remand to the District Court for another competency finding.
I. Factual Background and Procedural History
A. Michael’s homicide conviction and resulting death sentence
Hubert Michael’s story is a long and convoluted one, so we present only the facts most relevant to our decision. We draw many of these facts directly from the District Court’s opinion in Michael v. Horn, No. 3:CV-96-1554, 2004 WL 438678 (M.D.Pa. Mar.10, 2004), which in turn drew many of its facts from the Pennsylvania Supreme Court’s opinion affirming Michael’s death sentence, Commonwealth v. Michael, 544 Pa. 105, 674 A.2d 1044 (1996).
On July 12, 1993, Michael pulled up alongside 16-year-old Trista Eng, who was walking to her summer job at a Har-dee’s restaurant, and offered to drive her to work. She got into the car, and Michael drove to the State Game Lands in York *413 County, Pennsylvania. He forced Eng out of the vehicle, shot her three times with a .44 magnum handgun, and concealed her body.
In late August 1993, Michael was charged with first-degree murder. In September 1993, he was transferred to the medical housing area of the Lancaster County Prison for “closer observation” because he fell down the stairs in a possible suicide attempt (though Michael has denied that he was trying to kill himself). In November 1993, Michael assumed the identity of an inmate who was about to be released, and he escaped from prison. In the spring of 1994, he was apprehended in New Orleans and returned to Pennsylvania.
In October 1994, jury selection on the murder charge began in the Berks County, Pennsylvania, Court of Common Pleas. Michael pled guilty to first-degree murder and kidnapping. He tried to withdraw that plea six days later, but the Court denied his plea-withdrawal request.
In March 1995, Michael waived his right to be sentenced by a jury. He also stipulated to the existence of the two aggravating circumstances alleged by the Commonwealth (killing during the perpetration of a felony and a significant history of felony convictions), and he stipulated that there were no mitigating circumstances. After an extensive colloquy, the Court accepted Michael’s waiver of a right to a jury sentence, found that the aggravating circumstances outweighed the mitigating circumstances, and imposed the death penalty-
The Pennsylvania Supreme Court undertook an independent review of the record and affirmed the conviction and sentence. Michael, 674 A.2d at 1048. In July 1996, Governor Thomas Ridge signed an execution warrant, and Michael’s execution was scheduled for August 1996.
B. The District Court’s stay of Michael’s execution
Approximately one week before the scheduled execution date, the Defender Association of Philadelphia, Capital Habe-as Corpus Unit, moved for a stay of execution and an appointment of counsel in the District Court for the Middle District of Pennsylvania. That Court granted the stay and appointed the Defender Association as Michael’s counsel. Michael then wrote a letter dismissing the Defender Association from acting as his counsel and requesting that Governor Ridge re-sign his execution warrant “as soon as possible.” Michael, 2004 WL 438678, at *4.
In response, the Defender Association took the position that Michael was not competent. The District Court directed the Defender Association to confer with Michael. Following that conference, attorney Billy Ñolas submitted a declaration describing Michael as “ ‘agitated, incoherent, irrational, sad, unable to control his varying emotions, and ultimately ... catatonic and completely uncommunicative.’ ” Id. at *5. The declaration also indicated that Michael had authorized Ñolas to litigate his Pennsylvania Post Conviction Relief Act[1] (PCRA) proceedings. The District Court then stayed the federal habeas proceedings so that Michael’s PCRA claims could be litigated. Our Court affirmed that stay by judgment order in June 1997.
C. Michael’s PCRA Proceedings
As part of the PCRA proceedings, the Court of Common Pleas of York County conducted evidentiary hearings concerning Michael’s competence to plead guilty and *414 to waive the presentation of mitigating circumstances. The Commonwealth trial court denied relief on all claims, and Michael, represented by the Defender Association, appealed to the Pennsylvania Supreme Court.
While the appeal was pending, Michael filed an affidavit indicating that he did not wish the appeal to proceed. The Pennsylvania Supreme Court remanded the matter to the trial court to determine whether Michael was competent to discontinue the PCRA appeal. The Court of Common Pleas heard expert testimony and engaged in a colloquy with Michael. It found Michael competent, and the case returned to the Pennsylvania Supreme Court.
Before the Supreme Court could review the Court of Common Pleas’s competency finding, Michael filed a new affidavit asking the Supreme Court to “decide the merits of his PCRA appeal quickly, essentially repudiating his request to withdraw the appeal.” Commonwealth v. Michael, 562 Pa. 356, 755 A.2d 1274, 1276 (2000).[2] The Court therefore addressed the merits of the underlying PCRA appeal, concluding that Michael’s trial counsel had not been ineffective in failing to investigate and present indicia of his alleged incompetency. Id. at 1279-80. It also held that Michael’s claims pertaining to the failure to present mitigating evidence could not succeed, because counsel was fulfilling an ethical duty to comply with Michael’s directions. Id.
Reargument was sought, but Michael sent a letter to the Pennsylvania Supreme Court claiming that the Defender Association was not acting on his behalf. The Court denied reargument.
D. District Court proceedings after Michael’s PCRA litigation
1. District Court proceedings leading up to the dismissal order
Though the District Court stayed federal litigation pending the outcome of the PCRA proceedings, Michael wrote to the Court on three occasions (April 15, 1997; July 9, 1997; and December 26, 2000) to express his wish that the Court refrain from staying his execution.
In September 2001, the Court ruled that the presumption of correctness ordinarily attaching to state-court competency determinations [3] should not be applied because the PCRA court’s competency determination was not reviewed by the Pennsylvania Supreme Court. The District Court accordingly appointed Dr. Robert Wettstein, a board-certified psychiatrist and clinical professor, to determine “ ‘(1) whether Mr. Michael suffer[ed] from a mental disease, disorder or defect; (2) whether a mental disease, disorder or defect prevent[ed][him] from understanding his legal position and the options available to him; and (3) whether a mental disease, disorder or defect prevent[ed][him] from making a rational choice among his options.’ ” Michael, 2004 WL 438678, at *10. Accord Hauser v. Moore, 223 F.3d 1316, 1322 (11th Cir.2000) (per curiam). The Court also requested that Dr. Wettstein consider whether Michael had sufficient ability to consult with his attorney with a reasonable degree of rational understanding and the ability to understand legal proceedings.
*415 In June 2001, though the competency-issues had not been resolved, the Defender Association filed a 146-page habeas petition.[4] In May 2002, Dr. Wettstein submitted his report, which was based on his review of the PCRA record, York County Prison records, state prison records, Michael’s letters to the District Court, Michael’s school records, an affidavit from Michael’s sister, transcripts of an interview with Michael’s brother, reports prepared by doctors who had testified at Michael’s PCRA hearings, results of tests that Dr. Wettstein had personally administered, and eight hours of interviews with Michael. In the report Dr. Wettstein concluded, “with reasonable psychiatric certainty,” that Michael (1) was not suffering from any mental disease, disorder, or defect that substantially and adversely affected his ability to make a decision with regard to pursuing his appeals and (2) had the ability to understand the legal proceedings and to consult with his attorneys with a reasonable degree of understanding. Michael, 2004 WL 438678, at *10.
In July 2002, the District Court appointed Joseph Cosgrove, Esq., to represent Michael, and it scheduled an evidentiary hearing on Dr. Wettstein’s report. At the September 2002 hearing, the Court’s colloquy with Michael revealed — in the words of the District Court — “a rational understanding of each inquiry” and his desire to terminate the proceeding. Id. at *11.
2. The District Court’s dismissal of the habeas petition
The District Court relied heavily on Dr. Wettstein’s report. Id. at *16 (“Dr. Wett-stein’s report and testimony afford an ample foundation for a conclusion that Mr. Michael ‘has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation ....’” (omission in original)); see also id. at *13-16 (discussing Dr. Wettstein’s report and conclusions). The Court accepted Dr. Wettstein’s conclusions and went on to find that Michael’s decisions were “knowing, rational and voluntary.” Id. at *20. It explained that Michael’s decision to end his legal proceedings had been “consistently repeated to this Court over a number of years. It is thus not the product of uncontrollable im-pulsivity.” Id.
On March 10, 2004, the Court dismissed Michael’s habeas petition and dismissed all of Michael’s counsel, including the Defender Association and Cosgrove. Id. at *24.
E. Proceedings in our Court
Following the dismissal of Michael’s ha-beas petition, the Defender Association filed a notice of appeal from that dismissal to our Court. Almost immediately began Michael’s vacillation as to whether he wished to withdraw this appeal. His first letter to our Court — on April 14, 2004— indicated that he did not wish the appeal to proceed.
The Commonwealth moved for dismissal. On May 4, 2004, our Court conditionally granted this motion to dismiss, but the entry of the order was suspended for ten days to afford Michael an opportunity to indicate his desire to proceed with federal review of his case. Michael filed his sec *416 ond letter the next day — May 5 — indicating instead his desire to proceed with this appeal and his wish to have new counsel appointed in his appeal. We deferred ruling on the motion to dismiss and scheduled oral argument for June 2004.
Five days before the oral argument, we received a letter from Dr. Wettstein. It read in part as follows:
I have ... been informed that Mr. Michael represented to the Court of Appeals that he no longer wishes to be executed, but wants the legal issues in his ease presented with the assistance of new legal counsel. Based upon his recent change of mind, it is my psychiatric opinion that Mr. Michael’s mental state needs further exploration. His representation that he wishes to litigate his criminal conviction and death sentence should be evaluated.
Following oral argument, we granted a Certificate of Appealability (COA) on the question of whether the District Court violated 21 U.S.C. § 848(q)(4)(B) in dismissing Michael’s counsel and, if the District Court so erred, whether this error was harmless.[5] But we did not rule on the Commonwealth’s motion to dismiss the appeal.
On November 26, 2004, we received Michael’s third letter; we construed it as a pro se motion to withdraw his appeal and to dismiss Cosgrove as his counsel. On December 3, we entered an order directing counsel for all parties to file a response to the pro se motion. In response, Cosgrove indicated on December 20 that Michael was “anything but steadfast in his desire to terminate this appeal or my representation of him.”
On January 5, 2005, in another attempt to ascertain Michael’s position, the panel entered an order that warned Michael as follows (emphasis in original):
If you dismiss this appeal you will waive all further right to pursue this appeal. As a result you may also be denied any further review of your conviction and sentence by this or any other court. Additionally, in the future, you may be legally prohibited from filing a new habeas petition or other petition for review. In short, your dismissal of this appeal may terminate any further judicial review of your conviction and sentence.
On February 22, 2005, Michael sent his fourth letter to our Court. In it he indicated that he had read our January 5 order, and that he fully understood the consequences of his waiver. Michael noted that he had consulted with counsel, and that he nonetheless wished to withdraw his appeal.
But the following day, after a meeting with Cosgrove, a request was filed to defer any consideration of that letter for two weeks so that Michael could further consult with counsel. We deferred our decision to permit counsel time to meet once again with Michael.
On March 18, 2005, Cosgrove submitted a document, entitled “Report of Counsel,” indicating that a litigation plan was under development for Michael and asking us to proceed with a resolution of the question presented in the COA. But 10 days later, Michael sent to us his fifth letter, indicating his desire to dismiss his appeal. A *417 sixth letter followed on May 23, 2005, reiterating Michael’s request to dismiss his appeal.
On June 2, our Court issued the following order:
Inasmuch as the petitioner is represented by counsel, the pro se letters to withdraw the appeal are denied. The District Court’s order entered March 10, 2004, is vacated to the extent that it dismissed Joseph M. Cosgrove, Esq., as counsel, granted Michael’s motion to dismiss his habeas corpus petition and vacated the stay of execution. The matter is remanded for further proceedings to determine whether habeas corpus relief is warranted. We express no opinion on such questions as whether Michael’s claims are exhausted, procedurally barred or meritorious. In the event that Michael files any further pro se motions to dismiss his petition, we urge the District Court to deny them summarily. See Smith v. Armontrout, 865 F.2d 1515 (8th Cir.1988); St. Pierre v. Cowan, 217 F.3d 939, 949-950 (7th Cir.2000).[6]
The Commonwealth filed a petition for panel rehearing or rehearing en banc. We filed an order denying the petition on July 7, 2005, and the mandate issued on July 8.[7]
The panel recalled the mandate on August 10, 2005, and granted panel rehearing, explaining that the June 2 order “le[ft] the District Court with little guidance in this complicated case as to our reasons for remanding the case for further proeeedings and, indeed, [did] not identify what error (if any) the District Court committed in connection with the decision appealed.” Michael v. Horn, 144 Fed.Appx. 260, 263 (3d Cir.2005).[8]
On September 19, 2005, Michael sent yet another letter to our Court, stating the following: “After having recently spoken to my attorney, Joseph Cosgrove, I am advising this court that I wish for no further appeals regarding my sentence of death.”
Oral argument was scheduled for January 12, 2006. We received a letter from Dr. Wettstein on January 4. He wrote, among other things, the following:
I understand that the Circuit Court has decided to reconsider the case of Hubert Michael, whom I previously evaluated for the District Court. The fact that Mr. Michael has again vacillated as to whether he should continue with his current appeal raises a concern as to whether any waiver of his appeal of his death sentence is valid and voluntary. My previous report to the District Court was premised in part on his apparent steadfastness which has now dissipated. Accordingly, before any decision is made regarding Mr. Michael’s waiver of his rights, a further evaluation is warranted.
Then, on January 10, we received another letter from Michael (dated January 9). It read, “I want the Court to know that Joseph Cosgrove is both my friend and my lawyer, and I want him to remain my lawyer for the duration of this matter.”
*418 Michael sent a final letter on February 6. It read:
This letter is to inform the court that I, Hubert L. Michael, Jr., wish for no further appeals regarding my sentence of death. Please do not misconstrue my last letter to this court where I stated that I would like Joseph Cosgrove to continue to represent me.
Yes, I would like Joseph Cosgrove to continue to represent me for as long as I am before any court regarding any criminal matter.... However, I ask for no further appeals regarding my sentence of death.
Dr. Wettstein also sent a letter, referring to Michael’s February 6 letter, in which Dr. Wettstein reiterated that he “continued] to believe that further evaluation ... is warranted before any decision is made regarding a waiver of Mr. Michael’s current appeal.”
II. Jurisdiction and Standard of Review
The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254. As noted, our Court granted a COA on whether the District Court violated 21 U.S.C. § 848(q)(4)(B) by dismissing Michael’s counsel, so we have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253.[9]
III. Discussion
A. Can we dismiss Michael’s appeal?
Before we can even consider the merits in this case, we must deal with whether we should dismiss Michael’s appeal altogether, for Michael has indicated several times that he does not wish his appeal to proceed. To recap, we have letters to this effect dated April 14 and November 26 in 2004; February 22, March 28, May 23, and September 19 in 2005; and February 6 in 2006. On the other hand, Michael expressed a desire for his appeal to proceed on May 5, 2004. Cos-grove reported in December 2004 that Michael was “anything but steadfast in his desire to terminate this appeal,” and Michael made no effort to have our June 2005 order (sending the case back to the District Court) reconsidered or appealed. And his letter of January 9, 2006, suggested that he wanted Cosgrove to “remain [his] lawyer for the duration of this matter.”
Under Federal Rule of Appellate Procedure 42(b), appeals “may be dismissed on the appellant’s motion on terms agreed to by the parties or fixed by the court.” In United States v. Hammer, we stated that we had “discretion to grant, or to deny,” a defendant’s motion for dismissal. 226 F.3d 229, 234 (3d Cir.2000).[10] *419 So we can dismiss Michael’s appeal. But we must first address whether Michael is competent to withdraw his appeal.
B. Is Michael competent to dismiss his appeal?
The District Court found Michael competent in its 2004 opinion. Normally, we would presume that Michael’s competency continues to the present. See, e.g., Lonchar v. Thomas, 58 F.3d 588, 589 (11th Cir.1995) (per curiam); Smith v. Armontrout (Smith VII), 865 F.2d 1502, 1505 (8th Cir.1988) (en banc). But the presumption of continuing competency does not hold if “some substantial reason to the contrary appears.” Smith VII, 865 F.2d at 1505.
We believe that such a “substantial reason” appears here. In the District Court proceedings, Dr. Wettstein’s role was particularly important; his report and testimony were the bases for the District Court’s competency finding. The Court expressed high regard for Dr. Wettstein in its opinion, calling him “exceptionally well-qualified,” and stating that “[t]here was no evidence of possible bias on [his] part” and that “[t]here can also be no dispute about [his] qualifications.” Michael, 2004 WL 438678, at *20. But Dr. Wettstein subsequently has thrice taken the position that Michael should be reevaluated. As noted above, after learning of Michael’s desire to pursue this appeal, he wrote in June 2004 that “it is my psychiatric opinion that Mr. Michael’s mental state needs further exploration. His representation that he wishes to litigate his criminal conviction and death sentence should be evaluated.” In January 2006, Dr. Wettstein wrote again, stating that, because of Michael’s vacillations, a concern had been raised “as to whether any waiver of his appeal of his death sentence is valid and voluntary. My previous report to the District Court was premised in part on his apparent steadfastness[,] which has now dissipated.” He wrote a third time — in February 2006 — to suggest “further evaluation.” This second-guessing by the expert who was the foundation of the District Court’s competency finding constitutes a “substantial reason” not to presume continuing competency here.
The result in Smith VII is not to the contrary. There, Smith had changed his mind about whether he wished to pursue his habeas proceeding, apparently because he had gotten married. Smith VII, 865 F.2d at 1504. The en banc Eighth Circuit Court held that his change of position did not warrant reopening proceedings for the purpose of holding an additional competency hearing. Id. at 1506. The Court cited for support the conspicuous absence of “any allegations of new psychiatric examinations or new conduct by Smith, other than the facts of his marriage and his changes of mind.” Id. at 1504. Although affidavits from three psychiatrists supporting reassessment were before the Court, these did not suffice either. None of these psychiatrists had ever examined Smith, they had all used language that was “carefully hedged and tentative,” and the Court considered the dispositive issue to be “one of common sense and good moral judgment” rather than “of medical expertise.” Id. at 1505.
But here Dr. Wettstein has examined Michael, and thoroughly. Moreover, Michael’s previous steadfastness had been a key basis for Dr. Wettstein’s conclusion of competence. Dr. Wettstein has not now declared Michael incompetent, but he has called for a new evaluation, in language that is neither hedged nor tentative. The principal source for the District Court’s competency finding has wavered based on Michael’s post-evaluation conduct. We therefore do not apply the presumption of *420 continuing competency to the District Court’s 2004 finding.
An appeal may not be withdrawn if the prisoner is incompetent. See id. at 1506-07 (“If someone decides that he or she prefers to acquiesce in a presumptively lawful judgment of a court, this decision should be respected, unless that person’s mental condition is so abnormal that it does not meet accepted legal requirements.”); cf. Rees v. Peyton, 384 U.S. 312, 313-14, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966) (per curiam) (requiring a prisoner’s competency to be determined before deciding whether to allow a prisoner to withdraw his certiorari petition); Hammer, 226 F.3d at 232 & n. 2 (noting that we were satisfied with Hammer’s competency before granting his motion to dismiss his appeal). In Rees v. Peyton, the Supreme Court faced the question of how it should proceed when Rees, who had been convicted of murder and sentenced to death, directed his counsel to withdraw his petition for certiorari and to forgo any further federal habeas proceedings. 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583. Rees’s counsel advised the Court that “he could not conscientiously accede to these instructions” without Rees’s receiving a psychiatric evaluation. Id. at 313, 86 S.Ct. 1505. Rees was examined, but experts did not agree on whether he was incompetent. Id. The Court concluded that the District Court had to make a determination regarding Rees’s competency before it could make a decision about the certiorari petition. Because his “mental competence [was] of prime importance” to the question of whether withdrawal would be allowed, the District Court was directed to “make a judicial determination as to Rees’ mental competence and render a report on the matter to [the Supreme Court].” Id. at 313-14, 86 S.Ct. 1505. The Court further directed the District Court to determine whether Rees “ha[d] capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he [was] suffering from a mental disease, disorder, or defect which may substantially affect his capacity.” Id. at 314, 86 S.Ct. 1505.
If we have any doubts about Michael’s competency, Rees requires us to remand to the District Court for another competency hearing before we dismiss his appeal. Dr. Wettstein’s letters do give rise to doubts about Michael’s competency; thus we remand to determine if Michael is competent to make the decision to dismiss the appeal. Upon the District Court’s making its determination, it should send us its report on the issue setting forth its conclusion and the reasons for it. If Michael is again found competent, and if he again wishes to withdraw his appeal, then we must obey his wishes. Cf. Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (noting that an “accused has the ultimate authority” to decide whether to “take an appeal”).
❖ * * * * *
We therefore remand this matter to the District Court for another competency hearing. By doing so, we do not rule on whether to dismiss this appeal or on the 21 U.S.C. § 848(q)(4)(B) issue.[11] Michael has indicated that he wants Cosgrove as his attorney, and Cosgrove’s continued representation is permissible on remand without an order from the District Court.
We note that, if Michael is again found competent, he will have one last opportuni *421 ty to have his appeal heard. Accordingly, the District Court, if Michael is found competent, should ask him the following question: “Do you wish the Court of Appeals to dismiss the appeal taken in your name from the order entered in this Court dismissing the habeas corpus petition filed in your case?” If the answer is yes, we shall abide by that answer and dismiss the appeal.

. 42 Pa. Cons.Stat. Ann. §§ 9541-9546.

. Michael indicated in the District Court that he had filed the new affidavit "to speed the processing of his case because[,] ‘regardless if [he] did that or not [, the attorneys representing him] were still going to try to push that through.’ " Michael v. Horn, 414 F.3d 456, 2005 WL 1606069, at *1 n. 3 (3d Cir. July 7, 2005) (Greenberg, J., dissenting).

. See Demosthenes v. Baal, 495 U.S. 731, 735, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990) (per curiam).

. The petition raised significant challenges to Michael’s sentence. It claimed ineffective assistance of counsel in, inter alia, (1) failing to investigate and present Michael’s incompetency, (2) stipulating to the existence of aggravating circumstances, (3) stipulating falsely that there were no mitigating circumstances, and (4) causing Michael to enter a guilty plea. The petition also claimed (5) that the death penalty was unconstitutional and that the trial court improperly (6) allowed Michael to plead guilty, (7) denied the requests to withdraw his guilty plea, and (8) denied his requests for different counsel.

. Section § 848(q)(4)(B) provides that, "[i]n any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation ... shall be entitled to the appointment of one or more attorneys....” 21 U.S.C. § 848(q)(4)(B), repealed by Terrorist Death Penalty Enhancement Act of 2005, Pub.L. No. 109-177, tit. II, subtit. B, § 222(c), 120 Stat. 192, 232 (2006).

. Judge Greenberg dissented, stating that he would have dismissed the appeal.

. Judge Greenberg again dissented from the denial of panel rehearing. Michael v. Horn, 414 F.3d 456, 2005 WL 1606069, at *1-8 (3d Cir. July 7, 2005) (Greenberg, J., dissenting).

. Judge Greenberg concurred to emphasize that he viewed whatever had happened in the District Court respecting Michael's vacillations as "beyond the scope of our certificate of appealability.” Michael, 144 Fed.Appx. at 264 (Greenberg, J., concurring). Judge Nygaard dissented because he believed that the June 2 order was correct and, to the extent it was ambiguous, could be supplemented. Id. at 264-65 (Nygaard, J., dissenting).

. A COA may issue only upon "a substantial showing of the denial of a constitutional right.” 28 U.S.C. § 2253(c)(2). If a "district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court’s assessment of the constitutional claims debatable or wrong.” Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Where, as here, the District Court has rejected the claims on procedural grounds, the prisoner must establish “that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.” Id.

. It is also well settled that a defendant has a right to waive representation. See Faretta v. California, 422 U.S. 806, 834-36, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (establishing the right of criminal defendants to proceed without counsel when they elect to do so voluntarily and intelligently); see also United States v. Stubbs, 281 F.3d 109, 116 (3d Cir.2002).

. As already mentioned, however, this section was repealed in March 2006. Terrorist Death Penally Enhancement Act of 2005, Pub.L. No. 109-177, tit. II, subtit. B, § 222(c), 120 Stat. 192, 232 (2006).