

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-18-2006

# Michael v. Horn

Precedential or Non-Precedential: Precedential

Docket No. 04-9002

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Michael v. Horn" (2006). *2006 Decisions.* Paper 515.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/515

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-9002

HUBERT L. MICHAEL,

Appellant

v.

MARTIN HORN, Commissioner, Pennsylvania
Department of Corrections; *DAVID DIGUGLIELMO,
Superintendent of the State Correctional Institution at
Graterford; JOSEPH P. MAZURKIEWICZ,
Superintendent of the State Correctional Institution
at Rockview

* (Amended – See Clerk's Order dated 1/6/05)

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 96-cv-01554)
District Judge: Honorable Thomas I. Vanaskie

Argued January 12, 2006

Before: AMBRO, GREENBERG
and NYGAARD, <u>Circuit Judges</u>.

(Filed August 18, 2006)

Joseph M. Cosgrove, Esquire (Argued)
1460 Wyoming Avenue
Forty Fort, PA  18704

      Counsel for Appellant

Thomas W. Corbett, Jr.
   Attorney General
Richard A. Sheetz, Jr.
   Executive Deputy Attorney General
   Director, Criminal Law Division
Amy Zapp
   Chief Deputy Attorney General
   Appeals and Legal Services Section
Jonelle Harter Eshbach (Argued)
   Senior Deputy Attorney General
   Capital Litigation Unit
Office of Attorney General of Pennsylvania
Strawberry Square, 16th  Floor
Harrisburg, PA   17120

Michael A. Farnan
Pennsylvania Department of Corrections

Office of Chief Counsel
55 Utley Drive
P.O. Box 598
Camp Hill, PA 17011

Counsel for Appellees

OPINION OF THE COURT

AMBRO, <u>Circuit Judge</u>:

After finding Hubert Michael competent to terminate his *habeas corpus* petition in this death-penalty case, the District Court dismissed that petition. The dismissal was appealed, purportedly on Michael's behalf. He later vacillated on his desire to dismiss this appeal. We hold that the presumption of continuing competency does not apply here because the foundational expert for the District Court's competency finding has suggested a new evaluation. We therefore remand to the District Court for another competency finding.

## I. Factual Background and Procedural History

### A. Michael's homicide conviction and resulting death sentence

3

Hubert Michael's story is a long and convoluted one, so we present only the facts most relevant to our decision. We draw many of these facts directly from the District Court's opinion in *Michael v. Horn*, No. 3:CV-96-1554, 2004 WL 438678 (M.D. Pa. Mar. 10, 2004), which in turn drew many of its facts from the Pennsylvania Supreme Court's opinion affirming Michael's death sentence, *Commonwealth v. Michael*, 674 A.2d 1044 (Pa. 1996).

On July 12, 1993, Michael pulled up alongside 16-year-old Trista Eng, who was walking to her summer job at a Hardee's restaurant, and offered to drive her to work. She got into the car, and Michael drove to the State Game Lands in York County, Pennsylvania. He forced Eng out of the vehicle, shot her three times with a .44 magnum handgun, and concealed her body.

In late August 1993, Michael was charged with first-degree murder. In September 1993, he was transferred to the medical housing area of the Lancaster County Prison for "closer observation" because he fell down the stairs in a possible suicide attempt (though Michael has denied that he was trying to kill himself). In November 1993, Michael assumed the identity of an inmate who was about to be released, and he escaped from prison. In the spring of 1994, he was apprehended in New Orleans and returned to Pennsylvania.

In October 1994, jury selection on the murder charge

4

began in the Berks County, Pennsylvania, Court of Common Pleas. Michael pled guilty to first-degree murder and kidnapping. He tried to withdraw that plea six days later, but the Court denied his plea-withdrawal request.

In March 1995, Michael waived his right to be sentenced by a jury. He also stipulated to the existence of the two aggravating circumstances alleged by the Commonwealth (killing during the perpetration of a felony and a significant history of felony convictions), and he stipulated that there were no mitigating circumstances. After an extensive colloquy, the Court accepted Michael's waiver of a right to a jury sentence, found that the aggravating circumstances outweighed the mitigating circumstances, and imposed the death penalty.

The Pennsylvania Supreme Court undertook an independent review of the record and affirmed the conviction and sentence. *Michael*, 674 A.2d at 1048. In July 1996, Governor Thomas Ridge signed an execution warrant, and Michael's execution was scheduled for August 1996.

### B. The District Court's stay of Michael's execution

Approximately one week before the scheduled execution date, the Defender Association of Philadelphia, Capital Habeas Corpus Unit, moved for a stay of execution and an appointment of counsel in the District Court for the Middle District of

5

Pennsylvania. That Court granted the stay and appointed the Defender Association as Michael's counsel. Michael then wrote a letter dismissing the Defender Association from acting as his counsel and requesting that Governor Ridge re-sign his execution warrant "as soon as possible." *Michael*, 2004 WL 438678, at *4.

In response, the Defender Association took the position that Michael was not competent. The District Court directed the Defender Association to confer with Michael. Following that conference, attorney Billy Nolas submitted a declaration describing Michael as "'agitated, incoherent, irrational, sad, unable to control his varying emotions, and ultimately . . . catatonic and completely uncommunicative.'" *Id.* at *5. The declaration also indicated that Michael had authorized Nolas to litigate his Pennsylvania Post Conviction Relief Act[1] (PCRA) proceedings. The District Court then stayed the federal *habeas* proceedings so that Michael's PCRA claims could be litigated. Our Court affirmed that stay by judgment order in June 1997.

C.    Michael's PCRA Proceedings

As part of the PCRA proceedings, the Court of Common Pleas of York County conducted evidentiary hearings concerning Michael's competence to plead guilty and to waive

---

[1] 42 Pa. Cons. Stat. Ann. §§ 9541–9546.

the presentation of mitigating circumstances. The Commonwealth trial court denied relief on all claims, and Michael, represented by the Defender Association, appealed to the Pennsylvania Supreme Court.

While the appeal was pending, Michael filed an affidavit indicating that he did not wish the appeal to proceed. The Pennsylvania Supreme Court remanded the matter to the trial court to determine whether Michael was competent to discontinue the PCRA appeal. The Court of Common Pleas heard expert testimony and engaged in a colloquy with Michael. It found Michael competent, and the case returned to the Pennsylvania Supreme Court.

Before the Supreme Court could review the Court of Common Pleas's competency finding, Michael filed a new affidavit asking the Supreme Court to "decide the merits of his PCRA appeal quickly, essentially repudiating his request to withdraw the appeal." *Commonwealth v. Michael*, 755 A.2d 1274, 1276 (Pa. 2000).[2] The Court therefore addressed the merits of the underlying PCRA appeal, concluding that

---

[2] Michael indicated in the District Court that he had filed the new affidavit "to speed the processing of his case because[,] 'regardless if [he] did that or not [, the attorneys representing him] were still going to try to push that through.'" *Michael v. Horn*, No. 04-9002, 2005 WL 1606069, at *1 n.3 (3d Cir. July 7, 2005) (Greenberg, J., dissenting).

7

Michael's trial counsel had not been ineffective in failing to investigate and present indicia of his alleged incompetency. *Id.* at 1279–80. It also held that Michael's claims pertaining to the failure to present mitigating evidence could not succeed, because counsel was fulfilling an ethical duty to comply with Michael's directions. *Id.*

Reargument was sought, but Michael sent a letter to the Pennsylvania Supreme Court claiming that the Defender Association was not acting on his behalf. The Court denied reargument.

### D. District Court proceedings after Michael's PCRA litigation

#### 1. District Court proceedings leading up to the dismissal order

Though the District Court stayed federal litigation pending the outcome of the PCRA proceedings, Michael wrote to the Court on three occasions (April 15, 1997; July 9, 1997; and December 26, 2000) to express his wish that the Court refrain from staying his execution.

In September 2001, the Court ruled that the presumption of correctness ordinarily attaching to state-court competency

8

determinations[3] should not be applied because the PCRA court's competency determination was not reviewed by the Pennsylvania Supreme Court. The District Court accordingly appointed Dr. Robert Wettstein, a board-certified psychiatrist and clinical professor, to determine "'(1) whether Mr. Michael suffer[ed] from a mental disease, disorder or defect; (2) whether a mental disease, disorder or defect prevent[ed] [him] from understanding his legal position and the options available to him; and (3) whether a mental disease, disorder or defect prevent[ed] [him] from making a rational choice among his options.'" *Michael*, 2004 WL 438678, at *10. *Accord Hauser v. Moore*, 223 F.3d 1316, 1322 (11th Cir. 2000) (*per curiam*). The Court also requested that Dr. Wettstein consider whether Michael had sufficient ability to consult with his attorney with a reasonable degree of rational understanding and the ability to understand legal proceedings.

In June 2001, though the competency issues had not been resolved, the Defender Association filed a 146-page *habeas* petition.[4] In May 2002, Dr. Wettstein submitted his report,

---

[3] *See Demosthenes v. Baal*, 495 U.S. 731, 735 (1990) (*per curiam*).

[4] The petition raised significant challenges to Michael's sentence. It claimed ineffective assistance of counsel in, *inter alia*, (1) failing to investigate and present Michael's incompetency, (2) stipulating to the existence of aggravating circumstances, (3) stipulating falsely that there were no

9

which was based on his review of the PCRA record, York County Prison records, state prison records, Michael's letters to the District Court, Michael's school records, an affidavit from Michael's sister, transcripts of an interview with Michael's brother, reports prepared by doctors who had testified at Michael's PCRA hearings, results of tests that Dr. Wettstein had personally administered, and eight hours of interviews with Michael. In the report Dr. Wettstein concluded, "with reasonable psychiatric certainty," that Michael (1) was not suffering from any mental disease, disorder, or defect that substantially and adversely affected his ability to make a decision with regard to pursuing his appeals and (2) had the ability to understand the legal proceedings and to consult with his attorneys with a reasonable degree of understanding. *Michael*, 2004 WL 438678, at *10.

In July 2002, the District Court appointed Joseph Cosgrove, Esq., to represent Michael, and it scheduled an evidentiary hearing on Dr. Wettstein's report. At the September 2002 hearing, the Court's colloquy with Michael revealed—in the words of the District Court—"a rational understanding of

---

mitigating circumstances, and (4) causing Michael to enter a guilty plea. The petition also claimed (5) that the death penalty was unconstitutional and that the trial court improperly (6) allowed Michael to plead guilty, (7) denied the requests to withdraw his guilty plea, and (8) denied his requests for different counsel.

10

each inquiry" and his desire to terminate the proceeding. *Id.* at *11.

### 2. The District Court's dismissal of the *habeas* petition

The District Court relied heavily on Dr. Wettstein's report. *Id.* at *16 ("Dr. Wettstein's report and testimony afford an ample foundation for a conclusion that Mr. Michael 'has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation . . . .'" (omission in original)); *see also id.* at *13–16 (discussing Dr. Wettstein's report and conclusions). The Court accepted Dr. Wettstein's conclusions and went on to find that Michael's decisions were "knowing, rational and voluntary." *Id.* at *20. It explained that Michael's decision to end his legal proceedings had been "consistently repeated to this Court over a number of years. It is thus not the product of uncontrollable impulsivity." *Id.*

On March 10, 2004, the Court dismissed Michael's *habeas* petition and dismissed all of Michael's counsel, including the Defender Association and Cosgrove. *Id.* at *24.

### E. Proceedings in our Court

Following the dismissal of Michael's *habeas* petition, the Defender Association filed a notice of appeal from that

11

dismissal to our Court. Almost immediately began Michael's vacillation as to whether he wished to withdraw this appeal. His first letter to our Court—on April 14, 2004—indicated that he did not wish the appeal to proceed.

The Commonwealth moved for dismissal. On May 4, 2004, our Court conditionally granted this motion to dismiss, but the entry of the order was suspended for ten days to afford Michael an opportunity to indicate his desire to proceed with federal review of his case. Michael filed his second letter the next day—May 5—indicating instead his desire to proceed with this appeal and his wish to have new counsel appointed in his appeal. We deferred ruling on the motion to dismiss and scheduled oral argument for June 2004.

Five days before the oral argument, we received a letter from Dr. Wettstein. It read in part as follows:

> I have . . . been informed that Mr. Michael represented to the Court of Appeals that he no longer wishes to be executed, but wants the legal issues in his case presented with the assistance of new legal counsel. Based upon his recent change of mind, it is my psychiatric opinion that Mr. Michael's mental state needs further exploration. His representation that he wishes to litigate his criminal conviction and death sentence should be evaluated.

12

Following oral argument, we granted a Certificate of Appealability (COA) on the question of whether the District Court violated 21 U.S.C. § 848(q)(4)(B) in dismissing Michael's counsel and, if the District Court so erred, whether this error was harmless.[5] But we did not rule on the Commonwealth's motion to dismiss the appeal.

On November 26, 2004, we received Michael's third letter; we construed it as a *pro se* motion to withdraw his appeal and to dismiss Cosgrove as his counsel. On December 3, we entered an order directing counsel for all parties to file a response to the *pro se* motion. In response, Cosgrove indicated on December 20 that Michael was "anything but steadfast in his desire to terminate this appeal or my representation of him."

On January 5, 2005, in another attempt to ascertain Michael's position, the panel entered an order that warned Michael as follows (emphasis in original):

---

[5] Section § 848(q)(4)(B) provides that, "[i]n any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation . . . shall be entitled to the appointment of one or more attorneys . . . ." 21 U.S.C. § 848(q)(4)(B), *repealed by* Terrorist Death Penalty Enhancement Act of 2005, Pub. L. No. 109-177, tit. II, subtit. B, § 222(c), 120 Stat. 192, 232 (2006).

13

If you dismiss this appeal you will waive all further right to pursue this appeal. As a result you may also be denied any further review of your conviction and sentence by this or any other court. Additionally, in the future, you may be legally prohibited from filing a new habeas petition or other petition for review. *In short, your dismissal of this appeal may terminate any further judicial review of your conviction and sentence.*

On February 22, 2005, Michael sent his fourth letter to our Court. In it he indicated that he had read our January 5 order, and that he fully understood the consequences of his waiver. Michael noted that he had consulted with counsel, and that he nonetheless wished to withdraw his appeal.

But the following day, after a meeting with Cosgrove, a request was filed to defer any consideration of that letter for two weeks so that Michael could further consult with counsel. We deferred our decision to permit counsel time to meet once again with Michael.

On March 18, 2005, Cosgrove submitted a document, entitled "Report of Counsel," indicating that a litigation plan was under development for Michael and asking us to proceed with a resolution of the question presented in the COA. But 10 days later, Michael sent to us his fifth letter, indicating his desire to dismiss his appeal. A sixth letter followed on May 23, 2005,

14

reiterating Michael's request to dismiss his appeal.

On June 2, our Court issued the following order:

Inasmuch as the petitioner is represented by counsel, the pro se letters to withdraw the appeal are denied. The District Court's order entered March 10, 2004, is vacated to the extent that it dismissed Joseph M. Cosgrove, Esq., as counsel, granted Michael's motion to dismiss his habeas corpus petition and vacated the stay of execution. The matter is remanded for further proceedings to determine whether habeas corpus relief is warranted. We express no opinion on such questions as whether Michael's claims are exhausted, procedurally barred or meritorious. In the event that Michael files any further *pro se* motions to dismiss his petition, we urge the District Court to deny them summarily. *See Smith v. Armontrout*, 865 F.2d 1515 (8th Cir. 1988); *St. Pierre v. Cowan*, 217 F.3d 939, 949-950 (7th Cir. 2000).[6]

The Commonwealth filed a petition for panel rehearing or rehearing *en banc*. We filed an order denying the petition on

---

[6] Judge Greenberg dissented, stating that he would have dismissed the appeal.

July 7, 2005, and the mandate issued on July 8.[7]

The panel recalled the mandate on August 10, 2005, and granted panel rehearing, explaining that the June 2 order "le[ft] the District Court with little guidance in this complicated case as to our reasons for remanding the case for further proceedings and, indeed, [did] not identify what error (if any) the District Court committed in connection with the decision appealed." *Michael v. Horn*, 144 Fed. Appx. 260, 263 (3d Cir. 2005).[8]

On September 19, 2005, Michael sent yet another letter to our Court, stating the following: "After having recently spoken to my attorney, Joseph Cosgrove, I am advising this court that I wish for no further appeals regarding my sentence of death."

Oral argument was scheduled for January 12, 2006. We

---

[7] Judge Greenberg again dissented from the denial of panel rehearing. *Michael v. Horn*, No. 04-9002, 2005 WL 1606069, at *1–8 (3d Cir. July 7, 2005) (Greenberg, J., dissenting).

[8] Judge Greenberg concurred to emphasize that he viewed whatever had happened in the District Court respecting Michael's vacillations as "beyond the scope of our certificate of appealability." *Michael*, 144 Fed. Appx. at 264 (Greenberg, J., concurring). Judge Nygaard dissented because he believed that the June 2 order was correct and, to the extent it was ambiguous, could be supplemented. *Id.* at 264–65 (Nygaard, J., dissenting).

received a letter from Dr. Wettstein on January 4. He wrote, among other things, the following:

> I understand that the Circuit Court has decided to reconsider the case of Hubert Michael, whom I previously evaluated for the District Court. The fact that Mr. Michael has again vacillated as to whether he should continue with his current appeal raises a concern as to whether any waiver of his appeal of his death sentence is valid and voluntary. My previous report to the District Court was premised in part on his apparent steadfastness which has now dissipated. Accordingly, before any decision is made regarding Mr. Michael's waiver of his rights, a further evaluation is warranted.

Then, on January 10, we received another letter from Michael (dated January 9). It read, "I want the Court to know that Joseph Cosgrove is both my friend and my lawyer, and I want him to remain my lawyer for the duration of this matter."

Michael set a final letter on February 6. It read:

> This letter is to inform the court that I, Hubert L. Michael, Jr., wish for no further appeals regarding my sentence of death. Please do not misconstrue my last letter to this court where I

17

stated that I would like Joseph Cosgrove to continue to represent me.

Yes, I would like Joseph Cosgrove to continue to represent me for as long as I am before any court regarding any criminal matter. . . . However, I ask for no further appeals regarding my sentence of death.

Dr. Wettstein also sent a letter, referring to Michael's February 6 letter, in which Dr. Wettstein reiterated that he "continue[s] to believe that further evaluation . . . is warranted before any decision is made regarding a waiver of Mr. Michael's current appeal."

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254. As noted, our Court granted a COA on whether the District Court violated 21 U.S.C. § 848(q)(4)(B) by dismissing Michael's counsel, so we have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253.[9]

---

[9] A COA may issue only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a "district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable

### III. Discussion

#### A. Can we dismiss Michael's appeal?

Before we can even consider the merits in this case, we must deal with whether we should dismiss Michael's appeal altogether, for Michael has indicated several times that he does not wish his appeal to proceed. To recap, we have letters to this effect dated April 14 and November 26 in 2004; February 22, March 28, May 23, and September 19 in 2005; and February 6 in 2006. On the other hand, Michael expressed a desire for his appeal to proceed on May 5, 2004. Cosgrove reported in December 2004 that Michael was "anything but steadfast in his desire to terminate this appeal," and Michael made no effort to have our June 2005 order (sending the case back to the District Court) reconsidered or appealed. And his letter of January 9, 2006, suggested that he wanted Cosgrove to "remain [his] lawyer for the duration of this matter."

---

jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where, as here, the District Court has rejected the claims on procedural grounds, the prisoner must establish "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Under Federal Rule of Appellate Procedure 42(b), appeals "may be dismissed on the appellant's motion on terms agreed to by the parties or fixed by the court." In *United States v. Hammer*, we stated that we had "discretion to grant, or to deny," a defendant's motion for dismissal. 226 F.3d 229, 234 (3d Cir. 2000).[10]

So we can dismiss Michael's appeal. But we must first address whether Michael is competent to withdraw his appeal.

## B. Is Michael competent to dismiss his appeal?

The District Court found Michael competent in its 2004 opinion. Normally, we would presume that Michael's competency continues to the present. *See, e.g.*, *Lonchar v. Thomas*, 58 F.3d 588, 589 (11th Cir. 1995) (*per curiam*); *Smith v. Armontrout* (*Smith VII*), 865 F.2d 1502, 1505 (8th Cir. 1988) (*en banc*). But the presumption of continuing competency does not hold if "some substantial reason to the contrary appears." *Smith VII*, 865 F.2d at 1505.

---

[10] It is also well settled that a defendant has a right to waive representation. *See Faretta v. California*, 422 U.S. 806, 834–36 (1975) (establishing the right of criminal defendants to proceed without counsel when they elect to do so voluntarily and intelligently); *see also United States v. Stubbs*, 281 F.3d 109, 116 (3d Cir. 2002).

We believe that such a "substantial reason" appears here. In the District Court proceedings, Dr. Wettstein's role was particularly important; his report and testimony were the bases for the District Court's competency finding. The Court expressed high regard for Dr. Wettstein in its opinion, calling him "exceptionally well-qualified," and stating that "[t]here was no evidence of possible bias on [his] part" and that "[t]here can also be no dispute about [his] qualifications." *Michael*, 2004 WL 438678, at *20. But Dr. Wettstein subsequently has thrice taken the position that Michael should be reevaluated. As noted above, after learning of Michael's desire to pursue this appeal, he wrote in June 2004 that "it is my psychiatric opinion that Mr. Michael's mental state needs further exploration. His representation that he wishes to litigate his criminal conviction and death sentence should be evaluated." In January 2006, Dr. Wettstein wrote again, stating that, because of Michael's vacillations, a concern had been raised "as to whether any waiver of his appeal of his death sentence is valid and voluntary. My previous report to the District Court was premised in part on his apparent steadfastness[,] which has now dissipated." He wrote a third time—in February 2006—to suggest "further evaluation." This second-guessing by the expert who was the foundation of the District Court's competency finding constitutes a "substantial reason" not to presume continuing competency here.

The result in *Smith VII* is not to the contrary. There, Smith had changed his mind about whether he wished to pursue

21

his *habeas* proceeding, apparently because he had gotten married. *Smith VII*, 865 F.2d at 1504. The *en banc* Eighth Circuit Court held that his change of position did not warrant reopening proceedings for the purpose of holding an additional competency hearing. *Id.* at 1506. The Court cited for support the conspicuous absence of "any allegations of new psychiatric examinations or new conduct by Smith, other than the facts of his marriage and his changes of mind." *Id.* at 1504. Although affidavits from three psychiatrists supporting reassessment were before the Court, these did not suffice either. None of these psychiatrists had ever examined Smith, they had all used language that was "carefully hedged and tentative," and the Court considered the dispositive issue to be "one of common sense and good moral judgment" rather than "of medical expertise." *Id.* at 1505.

But here Dr. Wettstein has examined Michael, and thoroughly. Moreover, Michael's previous steadfastness had been a key basis for Dr. Wettstein's conclusion of competence. Dr. Wettstein has not now declared Michael incompetent, but he has called for a new evaluation, in language that is neither hedged nor tentative. The principal source for the District Court's competency finding has wavered based on Michael's post-evaluation conduct. We therefore do not apply the presumption of continuing competency to the District Court's 2004 finding.

An appeal may not be withdrawn if the prisoner is

22

incompetent. *See id.* at 1506–07 ("If someone decides that he or she prefers to acquiesce in a presumptively lawful judgment of a court, this decision should be respected, unless that person's mental condition is so abnormal that it does not meet accepted legal requirements."); *cf. Rees v. Peyton*, 384 U.S. 312, 313–14 (1966) (*per curiam*) (requiring a prisoner's competency to be determined before deciding whether to allow a prisoner to withdraw his *certiorari* petition); *Hammer*, 226 F.3d at 232 & n.2 (noting that we were satisfied with Hammer's competency before granting his motion to dismiss his appeal). In *Rees v. Peyton*, the Supreme Court faced the question of how it should proceed when Rees, who had been convicted of murder and sentenced to death, directed his counsel to withdraw his petition for *certiorari* and to forgo any further federal *habeas* proceedings. 384 U.S. 312. Rees's counsel advised the Court that "he could not conscientiously accede to these instructions" without Rees's receiving a psychiatric evaluation. *Id.* at 313. Rees was examined, but experts did not agree on whether he was incompetent. *Id.* The Court concluded that the District Court had to make a determination regarding Rees's competency before it could make a decision about the *certiorari* petition. Because his "mental competence [was] of prime importance" to the question of whether withdrawal would be allowed, the District Court was directed to "make a judicial determination as to Rees' mental competence and render a report on the matter to [the Supreme Court]." *Id.* at 313–14. The Court further directed the District Court to determine whether Rees "ha[d] capacity to appreciate his position and make a rational choice

23

with respect to continuing or abandoning further litigation or on the other hand whether he [was] suffering from a mental disease, disorder, or defect which may substantially affect his capacity." *Id.* at 314.

If we have any doubts about Michael's competency, *Rees* requires us to remand to the District Court for another competency hearing before we dismiss his appeal. Dr. Wettstein's letters do give rise to doubts about Michael's competency; thus we remand to determine if Michael is competent to make the decision to dismiss the appeal. Upon the District Court's making its determination, it should send us its report on the issue setting forth its conclusion and the reasons for it. If Michael is again found competent, and if he again wishes to withdraw his appeal, then we must obey his wishes. *Cf. Jones v. Barnes*, 463 U.S. 745, 751 (1983) (noting that an "accused has the ultimate authority" to decide whether to "take an appeal").

\* \* \* \* \*

We therefore remand this matter to the District Court for another competency hearing. By doing so, we do not rule on whether to dismiss this appeal or on the 21 U.S.C. § 848(q)(4)(B) issue.[11] Michael has indicated that he wants

---

[11] As already mentioned, however, this section was repealed in March 2006. Terrorist Death Penalty Enhancement Act of 2005,

24

Cosgrove as his attorney, and Cosgrove's continued representation is permissible on remand without an order from the District Court.

We note that, if Michael is again found competent, he will have one last opportunity to have his appeal heard. Accordingly, the District Court, if Michael is found competent, should ask him the following question: "Do you wish the Court of Appeals to dismiss the appeal taken in your name from the order entered in this Court dismissing the *habeas corpus* petition filed in your case?" If the answer is yes, we shall abide by that answer and dismiss the appeal.

GREENBERG, <u>Circuit</u> <u>Judge</u>, concurring.

I join in Judge Ambro's opinion remanding this case to the district court for the limited purposes of making another determination regarding Michael's competency before we determine whether to dismiss this appeal and to ascertain if Michael still wants us to dismiss the appeal. Nevertheless, because I have reservations regarding what we are doing and because in joining the opinion I am not being consistent with the position I took twice earlier on this appeal, I write this concurring opinion to explain why I am doing so.

---

Pub. L. No. 109-177, tit. II, subtit. B, § 222(c), 120 Stat. 192, 232 (2006).

25

At the outset I want to point out that there are two motions pending to dismiss the appeal: the respondents' motion and Michael's constantly repeated pro se letter motion. I focus on Michael's motion because it is the key to this appeal inasmuch as if he had wanted the appeal to be heard on the merits it likely already would have been heard and decided. On the other hand, unless constrained by Michael's letter to us on May 5, 2004, if he is competent to make the decision to ask us to dismiss this appeal, I agree with Judge Ambro that we should dismiss the appeal. I do not see how we could do otherwise inasmuch, as I will explain below, Michael did not take this appeal. See Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312 (1983) ("[T]he accused has the ultimate authority to make [the] decision[ ] . . . whether to . . . take an appeal."); see also Faretta v. California, 422 U.S. 806, 834-36, 95 S.Ct. 2525, 2540-41 (1975).

The letter of May 5, 2004, which could prevent us from satisfying the obligation that we otherwise would have to dismiss this appeal, asked us to hear his appeal on the merits. But if we decline to dismiss this appeal by reason of Michael's May 5, 2004 letter, which is his only communication to this court requesting that we entertain the appeal, we would have to disregard Michael's request on six occasions after May 5, 2004, that we dismiss his appeal. In my view, regardless of what might be appropriate if an appellant repeatedly changes his position on whether his case should be heard on the merits, or has not repeatedly stated that he wants the appeal dismissed, see

26

St. Pierre v. Cowan, 217 F.3d 939, 949-50 (7th Cir. 2000); Smith v. Armontrout, 865 F.2d 1515, 1516 (8th Cir. 1988), inasmuch as Michael has not taken a seesaw approach on his request that we dismiss the appeal, neither St. Pierre nor Smith is a precedent that could support a decision to deny his motion to dismiss this appeal. Rather, it is clear that if Michael is competent and we do not dismiss this appeal we would not be following the Supreme Court's direction in Jones that a court must recognize that the accused decides whether to take an appeal. Thus, even though a court of appeals ordinarily exercises discretion in determining whether to dismiss an appeal, see United States v. Hammer, 226 F.3d 229, 234 (3d Cir. 2000), in this case it seems clear to me that we do not have discretion to deny Michael's request or, if we do, that we would abuse our discretion if we did not grant his request.

It is highly significant, indeed remarkable, with respect to the tenuous nature of these proceedings, that Michael did not decide to take an appeal in this case in the first place and, in fact, this case never should have reached this court. Thus, the actual question before us is whether a defendant may cause an appeal filed in his name without his authority by someone else to be dismissed. In this case, the Capital Habeas Corpus Unit of the Defender Association of Philadelphia, without Michael's authorization, filed the appeal from the district court's order of March 10, 2004, granting Michael's motion to dismiss the habeas corpus petition. Thus, this case truly is extraordinary because the Capital Habeas Corpus Unit filed this unauthorized

27

appeal in the name of an appellant whom the district court had found to be competent, from an order that the appellant had sought and obtained and from which, quite naturally, he did not want to appeal.

Moreover, there is yet another extraordinary fact about this appeal. The Capital Habeas Corpus Unit filed the appeal even though the district court in its March 10, 2004 order dismissing the petition for habeas corpus also dismissed the Capital Habeas Corpus Unit and all its attorneys as counsel for Michael, Michael v. Horn, No. 3:CV-96-1554, 2004 WL 438678, at *24 (M.D. Pa. Mar. 10, 2004), and neither we nor the district court ever has stayed that order.[12] Accordingly, the Capital Habeas Corpus Unit acted without authority when it

_____

[12]The Capital Habeas Corpus Unit filed its notice of appeal solely on behalf of Michael and did not recite in the notice of appeal that it was appealing on behalf of itself. In accordance with our practice the clerk of this court entered an order on April 13, 2004, appointing the Capital Habeas Corpus Unit "to continue to represent" Michael on this appeal, thus demonstrating that the clerk did not know that the district court had dismissed the Capital Habeas Corpus Unit as counsel for Michael. It is understandable that the clerk did not know that the district court had dismissed the Capital Habeas Corpus Unit inasmuch as the Capital Habeas Corpus Unit filed the notice of appeal. In any event the clerk made the appointment after the Capital Habeas Corpus Unit filed the appeal so the clerk's order could not have given it the authority to file the notice of appeal. The appointment did not last long for a panel of this court revoked it on May 4, 2004.

28

filed this appeal in an attempt to frustrate Michael's wishes. The reality of the situation could not be clearer. The Capital Habeas Corpus Unit, rather than representing Michael, its supposed client, was representing itself and advancing its own agenda when it filed this appeal.

Michael made the situation clear to this court at the outset of this appeal when he wrote an undated letter to Chief Judge Scirica that this court received on April 14, 2004, stating as follows:

> My name is Hubert L. Michael, Jr. I recently had my death warrant signed by the governor of Pennsylvania. I am not appealing my sentence.
>
> I was recently able to get the attorneys, with the Defender Association of Philadelphia, dismissed from trying to represent me in any capacity. This was ordered by Judge Thomas Vanaskie of the U.S. District Court.
>
> I am now writing you because I know that the courts had not heard the last of these attorneys with the Capital Habeas Corpus Unit.
>
> These attorneys are not authorized by me, or the courts, to file any petitions, etc., on my behalf. I ask this court to not recognize any petitions filed

29

by these attorneys or any other individual.

I would also like to state for the record the I am one-hundred percent mentally competent. As I pled guilty to homicide, in the Courts of Common Pleas, my mental state is the only avenue for these attorneys to pursue.

Let's stop this legal merry-go-round by these attorneys.

As anyone can see, and as can be said with respect to all of Michael's correspondence to this court, the letter was completely clear and coherent and was not the product of an incompetent or mentally disturbed author. Quite to the contrary, Michael demonstrated in his April 14, 2004 letter that he had an excellent grasp of the situation confronting him as the Capital Habeas Corpus Unit already had filed its unauthorized appeal.[13] Accordingly, it is clear that from the very time that Capital Habeas Corpus Unit filed this appeal, the proceedings in this

---

[13] I am uncertain when Michael found out that the Capital Habeas Corpus Unit filed the appeal, and thus I am uncertain if he was aware that it had filed the appeal before he wrote the April 14, 2004 letter. I do know, however, from the certificate of service attached to the notice of appeal that the attorney for the Capital Habeas Corpus Unit served the notice of appeal solely on a Pennsylvania Assistant Attorney General and that he did so by mail on April 8, 2004.

30

court have been irregular as the appeal never should have been taken.

It is important to remember that the appeal followed district court proceedings in which the court dismissed the petition at Michael's request only after the most meticulous consideration of his competency. The court started its opinion dismissing the petition by indicating that "[a]t issue is this matter is whether death-sentenced Hubert Michael is competent and has knowingly, rationally, and voluntarily chosen to waive . . . a collateral challenge to his state court conviction and sentence." Michael v. Horn, No. 3:CV-96-1554, 2004 WL 438678, at *1 (M.D. Pa. Mar. 10, 2004). The court ended its opinion explaining as follows:

> To determine whether Mr. Michael is competent to decide to dismiss counsel and this habeas corpus proceeding, this Court sought to provide 'a constitutionally adequate fact-finding inquiry to make a reliable determination . . . .' Mata v. Johnson, 210 F.3d 324, 327 (5th Cir. 2000). That process included (1) a current examination by a highly qualified expert [Dr. Robert Wettstein], (2) an opportunity for the parties to present pertinent evidence, and (3) an examination of Mr. Michael in open court concerning his decision to waive further proceedings. For purposes of this proceeding,

31

Mr. Michael was also appointed independent counsel.

Throughout these proceedings, Mr. Michael has maintained the consistent position that he does not seek federal court intervention with respect to his conviction and sentence. Having found, without hesitation, that Mr. Michael is competent, and has made a knowing, rational and voluntary decision, this Court has no choice but to honor that decision.

As did the death-sentenced inmate in Comer [v. Stewart, 230 F. Supp. 2d 1016 (D. Ariz. 2002)], Mr. Michael 'has made a competent and free choice, which "is merely and example of doing what you want to do, embodies in the word liberty."' 230 F. Supp. 2d at 1072. Also worth reiterating here is the Eleventh Circuit's admonition in Sanchez-Velasco v. Sec'y of the Dep't of Corr., 287 F.3d 1015, 1033 (11th Cir. 2002), affirming a district court's finding that a defendant competently, knowingly and voluntarily waived federal court collateral review:

> [W]e should not forget the values that motivated the Supreme Court's Whitmore [v. Arkansas, 495 U.S.

32

149, 110 S.Ct. 1717, 109 L. Ed. 2d 135 (1990)] decision and what is really at stake in this kind of case. These cases are about the right of self-determination and freedom to make fundamental choices affecting one's life . . . . [A] death row inmate . . . does not have many choices left. One choice the law does give him is whether to fight the death sentence he is under or accede to it. Sanchez-Velasco, who is mentally competent to make that choice, has decided not to contest his death sentence any further. He has the right to make that choice . . . . He has never asked [the attorneys] to represent him or consented to have them do so. He has directed them to leave his case alone, and the law will enforce that directive.

Likewise, this Court has no choice but to enforce Mr. Michael's knowing, rational and voluntary directive that legal challenges to his conviction and sentence cease.

33

Id. at *23.

In considering this appeal we also should keep in mind that Michael is in an unusual position with respect to his attorney on the appeal, Joseph M. Cosgrove. Michael wants Cosgrove to represent him, and thus he does not view Cosgrove in the negative way he views the Capital Habeas Corpus Unit. Yet as I explained in my dissent from the order denying rehearing on July 7, 2005, "Cosgrove and Michael are working at cross-purposes as it is clear that Cosgrove does not want us to dismiss Michael's appeal but Michael does." Michael v. Horn, No. 04-9002, 2005 U.S. App. LEXIS 13463, at *15 (3d Cir. July 7, 2005).

Why then do we not dismiss this appeal at this time as Michael repeatedly has asked us to do? After all, it might be thought that if he was competent to dismiss the petition for habeas corpus surely he must be competent to dismiss the appeal. The reason is that Dr. Robert Wettstein, on whom the district court relied in finding Michael competent, since has expressed some words of caution regarding Michael's competency. Five days before we heard a preliminary oral argument in this case on June 22, 2004, and thus before we issued our limited certificate of appealability in this case dealing only with the discharge of his attorneys in the district court's March 10, 2004 order, we received a letter that had been signed by Dr. Wettstein indicating:

34

> I have . . . been informed that Mr. Michael represented to the Court of Appeals that he no longer wishes to be executed, but wants the legal issues in his case presented with the assistance of new legal counsel. Based upon his recent change of mind, it is my psychiatric opinion that Mr. Michael's mental state needs further exploration. His representation that he wishes to litigate his criminal conviction and death sentence should be evaluated.

Later Dr. Wettstein wrote a letter dated January 4, 2006, explaining that "a further evaluation is warranted" because Michael had "again vacillated" with respect to continuing his appeal. At that time Dr. Wettstein said that he would be willing to make the evaluation. He reiterated that position in another letter about a month later. It appears that he wrote these letters as a result of contact between him and Cosgrove.

Regardless of the etymology of these letters, obviously they should have caused us to pause before we dismissed the appeal, and they did have that effect. Yet we should consider the letters within the context of the actual history of this appeal. As Judge Ambro points out in his opinion, Michael wrote this court on April 14, 2004; November 26, 2004; February 22, 2005; March 28, 2005; May 23, 2005; September 19, 2005; and February 6, 2006, indicating that he does not want the appeal to proceed. The only time he took a contrary position was on May

35

5, 2004, when he requested that the appeal proceed.

It is true, as Judge Ambro also points out, that Michael "made no effort to have our June [2, 2005] order (sending the case back to the District Court) reconsidered or appealed," but neither Dr. Wettstein nor anyone else can draw any inference from that inaction. After all, could anyone really expect a litigant represented by counsel to file a <u>pro</u> <u>se</u> petition for rehearing or a petition for certiorari?[14] Moreover, when the respondents petitioned for rehearing of the June 2, 2005 order, Michael did not oppose that petition and ask us to adhere to the June 2, 2005 order. If his failure to seek a reversal of the June 2, 2005 order can give rise to an inference that he did not object to the remand, then his failure to object to the respondents' petition for rehearing or to our August 10, 2005 order granting rehearing of the June 2, 2005 order and recalling the mandate issued following the June 2, 2005 order would require that we draw the reverse inference that he did not want the matter remanded as provided in the June 2, 2005 order.

It is also evident that the fact that he wants Cosgrove to be his attorney does not mean that Michael wants his appeal to be heard and cannot in any way suggest that he is vacillating with respect to that question. Michael clearly wants Cosgrove as his attorney at the same time that he wants his appeal to be

---

[14]The only ways Michael could have challenged the June 2, 2005 order was to petition for a rehearing or for certiorari.

dismissed, and there is no reason why this representation should not be permitted inasmuch as Cosgrove has agreed to be his attorney. Though I can understand why it might seem surprising that Michael still wants Cosgrove as his attorney inasmuch as they have different attitudes about whether we should dismiss the appeal, I also understand why he would want Cosgrove as his attorney as they frequently have conferred, and Cosgrove has visited him quite often. Plainly they have had a significant relationship. Indeed, in a letter to this court dated January 9, 2006, Michael described Cosgrove as his lawyer and "friend."

Now that I have given the background of the case as germane to the remand we are ordering, I will explain why I have reservations about the remand but nevertheless agree to it.[15] I first will explain why I have reservations focusing on Dr. Wettstein's letters and then explain my more general reservations regarding a remand. My first problem with Dr. Wettstein's letters is that I really do not know if he had been given the full picture before he wrote them. After all, as he explained in his June 2004 letter, he was basing his opinion on what he had been "informed," so that in assessing his letters it would be significant to know what information he had when he wrote them. In this regard I want to point out that in Dr. Wettstein's January 4, 2006 letter he said that a further

---

[15]Actually my opinion already makes it obvious that I have reservations about the remand so my explanation of the reasons for the reservations at this point merely expands on what I have said.

evaluation is warranted because Michael had "again vacillated." Yet the factual basis for the statement is questionable because even if we treat Michael's February 5, 2005 letter asking for two weeks to reconsider his decision to have this appeal dismissed, to which Judge Ambro refers in his opinion, as reflecting vacillation, on March 28, 2005, he made it clear that he wanted the appeal to be dismissed and he has adhered to that position ever since. Thus, from March 28, 2005, until January 4, 2006, Michel simply had not vacillated.

But I do not want to protract these proceedings any longer by suggesting that we remand the case for the district court to ascertain what information Dr. Wettstein had when he wrote his letters as a preliminary step before we determine whether we should remand the case for a further evaluation of Michael's competency. I reject this idea of a preliminary remand because a study of the record in this case shows that actually Michael has been quite consistent in his wish that we dismiss this appeal. Moreover, Dr. Wettstein has not repudiated the conclusion he stated to the district court that Michael at that time was competent to make the decision to dismiss the habeas corpus proceedings. He has suggested only that Michael be evaluated further. It seems clear to me that Michael has been consistent because Michael's only real inconsistency with respect to his wish to dismiss this appeal was on May 5, 2004, when he asked that we hear the case. It is true that, as Judge Ambro has explained, and I already have indicated, on February 5, 2005, Michael asked for two weeks more to consider whether

38

he wanted the appeal dismissed following which on March 28, 2005, he said he wanted it dismissed. It would be a stretch, but I suppose that a person asking for time to think over a decision could be characterized as vacillating.

In considering whether Michael's hesitation, which at the latest ended 16 months ago, can be regarded as indicating that he has been vacillating to such a degree as to reflect on his competency, we should remember what every judge and attorney knows, i.e., litigation whether criminal or civil does not go forward in a straight line, and litigants whose competency cannot be questioned and, in fact, is not questioned change their minds regarding critical issues during the course of litigation. I will give two examples known to everyone familiar with judicial proceedings.

Federal Rule of Criminal Procedure 11(b) sets forth a detailed list of requirements that a court must follow before accepting a plea of guilty, and state courts have similar procedures. One might suppose that when courts follow those rules, as they almost always do, and the defendant pleads guilty, that he quite conclusively has waived his right to a trial at least with respect to whether he is guilty of the offense for which he has been charged.[16] Yet there is an extensive body of case law

---

[16]Sometimes a separate proceeding is required for determination of the sentence to be imposed. In fact, that was the situation in Michael's prosecution.

dealing with motions by defendants to withdraw pleas of guilty. See, e.g., United States v. Jones, 336 F.3d 245 (3d Cir. 2003). Obviously a defendant making such a motion has changed his mind and can be said to have vacillated but can anyone believe that merely because he does so that the court should order that a competency evaluation be made of him?

It often correctly is said that the parties resolve most civil litigation through settlement agreements. But, as judges and attorneys know, a settlement does not always resolve the controversy at hand. That circumstance has give rise to much litigation dealing with enforcement of settlements, frequently because parties have changed their minds and reject settlements they earlier approved. See, e.g., Commc'n Workers of Am. v. N.J. Dep't of Personnel, 41 Fed. Appx. 554 (3d Cir. 2002) (per curiam) ("The National . . . notified the district court that the National no longer consented to the proposed settlement."). Should we conduct competency evaluations of civil litigants who reject settlements to which they have agreed?

In the context of what is involved in this case, I regard Michael's hesitation about this appeal going forward as not reflecting on his competency at all. For him this case has not involved money or even liberty. Rather, this litigation involves the ultimate question of life or death. If faced with his choice, the most competent and stable person might hesitate or vacillate before dismissing an appeal in an action that, if continued, surely would delay the execution of a death sentence, as it

40

already has with respect to Michael, or, even if the chance of success may seem remote, actually preclude it.[17]  Moreover, as I have explained, his actual degree of vacillation has been quite minimal.  Thus, inasmuch as Dr. Wettstein has predicated his call for Michael's further evaluation on Michael's vacillation I have serious questions about the efficacy of Dr. Wettstein's suggestion.  Accordingly, I have two problems with Dr. Wettstein's letters.  First, I do not know that they reflect what actually happened with respect to Michael's vacillation.  Second, I doubt that Michael's vacillation can be regarded as so significant with respect to his competency that it casts doubt on the prior unassailable determination of the district court that he was competent to decide whether this litigation should go forward.

As I said earlier, in addition to questioning whether Michael's minimal vacillation calls for his further evaluation, there are two more general reasons not specifically dealing with Michael's competency why I am agreeing with reluctance to a remand for a further evaluation.  To start with there is no doubt about Michael's guilt.  He did, after all, plead guilty.  While I am aware that a defendant sometimes will plead guilty to a crime he has not committed, that did not happen here.  After Michael murdered Trista Eng, he concealed her body in a

---

[17]Michael was aware of similar possibilities if he kept the district court proceedings going, but he elected not to do so.  Michael v. Horn, 2004 WL 438678, at *11.

41

wooded area. The body was not found until he confessed to his brother more than a month later that he murdered her and told him where he had concealed the body. His brother and other family members searched for and found the body and only then notified the Pennsylvania state police about the situation. Clearly, only the murderer could have known where the body could be found. Thus, this is not a case in which there is even a remote possibility that an innocent defendant has been convicted.

The second general reason not specifically related to Michael's competency why I have reservations regarding the remand concerns Trista Eng herself as well as her family. I realize that it sometimes seems that the criminal law is more concerned with defendants than victims. I regret this fact, but it is inevitable as a prosecution and trial focus on what the defendant did and the procedures that must be followed with respect to his plea and, depending on his plea, to his trial. Yet this imbalance has caused concern among legislative bodies and it is good to be able to note that they have taken steps to redress the imbalance such as by passing victims' rights statutes.

More than 13 years have passed since Michael murdered 16-year old Trista Eng who was a total stranger to him. He encountered her when she was on her way to work at a Hardees restaurant where she had a summer job. In a wanton and senseless act, he murdered her because he faced rape charges involving another woman that he felt were not justified. He

42

pleaded guilty to murdering Trista Eng, and the Pennsylvania Supreme Court upheld his conviction on a mandatory appeal, Commonwealth v. Michael, 674 A.2d 1044 (Pa. 1996), and later affirmed the trial court's denial of post-conviction relief. Commonwealth v. Michael, 755 A.2d 1274 (Pa. 2000). Then, at Michael's own request at a time that he undoubtedly was competent, the district court dismissed the habeas corpus proceedings started in his name. There can be no doubt that Michael was competent when he asked the district court to dismiss the habeas corpus proceedings. Indeed, when we issued the certificate of appealability in this case we did not even mention a competency question, and thus even if we did not dismiss the appeal we could not review the district court's determination that Michael was competent to cause the habeas corpus proceedings to be dismissed.

I cannot help but think that the proceedings in this case must be torturing the family of Trista Eng. Her family knows what everyone who is familiar with this case knows, i.e., Michael murdered her, and though he has been sentenced to die and the Pennsylvania courts have upheld his conviction and sentence both on direct appeal and on a collateral review, the sentence has not been carried out. Though no one can say for sure how Trista Eng's life would have unfolded, I can say that if Michael had not murdered her she would now be a 29-year old woman and would have had an opportunity to live her life and to marry and have her own family. Michael deprived her of that opportunity.

43

Indeed, I cannot help but wonder whether Michael has sought to terminate these proceedings because he recognizes the harm that he has done to Trista Eng and her family and has been trying to terminate the judicial proceedings knowing that if he does so he will make amends so far as he now can do. I say this because surely he must have felt remorse after he murdered Trista Eng for I can discern no other reason why he confessed to his brother that he had murdered her. Thus, it seems that, notwithstanding the crime that Michael committed, he plainly differs from the remorseless defendants that courts sometimes see who exalt in what they have done.

I ask this question: Does not the court system owe anything to Trista Eng and her family and, so far as it can do so, while acting consistently with the law, should it not bring her family's torture to an end, particularly when the person responsible for her murder wants it ended? I know that with respect to criminal punishments death is different. See Furman v. Georgia, 408 U.S. 238, 306-07, 92 S.Ct. 2726, 2760 (1972) (Stewart, J., concurring). But cannot the same thing be said with respect to the effect of the crime of murder on the victim and her family as compared to all other crimes? Is our law so one sided that at a trial and on appeals only the defendant is of any importance?

Anyone who reads my opinion might wonder why, instead of joining in Judge Ambro's opinion, I am not dissenting and voting to dismiss this appeal. Moreover, in this regard a

44

reader could point to my dissent from the June 2, 2005 order remanding the case in which I said that I would dismiss the appeal and my dissent from the order denying the petition seeking a rehearing of the June 2, 2005 order in <u>Michael v. Horn</u>, 2005 U.S. App. LEXIS 13463, at *26, in which I indicated that I believed that "the panel should grant rehearing, vacate the June 2, 2005 order, and dismiss the appeal." Indeed, a reader reasonably could assert that by joining in Judge Ambro's opinion I am vacillating.

But in the end there are three reasons why I am not dissenting and instead am joining in Judge Ambro's opinion. First, of course, I believe that regardless of the considerations I have set forth, Judge Ambro's opinion is correct and I cannot allow my personal view of a case to trump my obligation to follow the law.[18] Second, at the time of the June 2, 2005 order remanding the case and at the time of the denial of the petition seeking rehearing of that order the situation was different than it is now because the panel was remanding the matter to the district court "for further proceedings to determine whether habeas corpus relief is warranted," thus opening up the entire case in the district court in complete disregard of the limitations in our certificate of appealability, and the panel was adhering to

---

[18]If I had written the majority opinion, in some respects it would have differed from what Judge Ambro wrote. But it is always true that even though judges agree on the appropriate outcome of a case, they would not write identical opinions.

45

that position when denying rehearing. I thought that these orders were not justified. Now the panel is taking what seems to me to be the more reasonable and nuanced position that Michael be reevaluated. Thus, the choice I face now is different from that which I faced a year ago.

Third, I have reconsidered the district court's opinion in this matter in the light of Judge Ambro's opinion and have taken particular note that the district court indicated that in considering Michael's competency its "process included . . . a current examination by a highly qualified expert," i.e., Dr. Wettstein. Indeed, the district court listed Dr. Wettstein's examination as the first step in its three-step competency inquiry. Now that that highly qualified expert believes there should be a further evaluation, whatever my reservations, I think that it is appropriate to accede to his suggestion.

In closing I want to comment on the limited scope of our remand. We are remanding the case for the district court to determine if Michael is competent to dismiss this appeal. If he is and he adheres to his decision to dismiss the appeal, we will do so and the appeal will be over. In that event it will not matter whether the determinations that the district court made leading to its order of March 10, 2004, dismissing his habeas corpus petition were correct or incorrect as we cannot review them.

On the other hand, if Michael is not competent to dismiss the appeal or if he is competent to do so but asks us to

46

adjudicate it on the merits we will not dismiss the appeal. Rather, we will decide the appeal. In that event we will have jurisdiction to answer only the single two-part question on which we granted a certificate of appealability on June 30, 2004, "whether the District Court violated 21 U.S.C. § 848(q)(4)(B) by dismissing counsel for Hubert Michael and, if the District Court so erred, whether the error was harmless." See Miller v. Dragovich, 311 F.3d 574, 577 (3d Cir. 2002).

I make the foregoing point so that it should be clear that the proceedings on the remand need not be protracted. The district court on the remand will not be dealing with a quasi-motion for reconsideration of its March 10, 2004 decision and order and will not be reexamining its original determinations including, in particular, its determination that Michael was competent to cause the habeas corpus proceeding to be dismissed and that he had made "a knowing, rational and voluntary decision" to cause it to be dismissed which the court was obliged to honor. It will be dealing with his competency now to dismiss this appeal. Thus, any reference to Michael's competency during the period this case was pending in the district court or to the evidence on that issue can be germane on the remand only insofar as it may have bearing on his competency now.

For all the reasons that I have stated and notwithstanding my reservations, I join in Judge Ambro's opinion ordering a remand in this case for the limited purposes that the district

47

court determine Michael's competency to dismiss the appeal and for the district court to ask Michael whether he still wants us to dismiss the appeal.